## Mobile & Ohio Railroad Company v. Dill.

(Decided January 23, 1917.)

### Appeal from Hickman Circuit Court.

1. Carriers—Misdirection of Passenger—Wrong Train—Duty of Carrier—Ejection.—Where two roads jointly maintain a union station and run trains into and out of that station, and a party holding a ticket over one of the roads, by misdirection of their joint employes or the employes of the wrong train, takes passage on the

wrong train, such a party is not a trespasser in the sense that he may be ejected at any time or place, but is entitled to ride on the wrong train to the nearest reasonably safe and convenient point from which he can reach a train on the proper road; and where this is done the carrier is not liable in damages.

2. Carriers—Ejection of Passenger—Unsuitable Place—Liability of Carrier.—In such a case, where the passenger is carried to an unsuitable place beyond the nearest reasonably safe and convenient point to take the train on the right road, she may recover damages.

3. Carriers—Ejection of Passenger—Unsuitable Place—Measure of Damages.—In such a case, damages for mental suffering based on fright cannot be recovered by the passenger, where neither personal injury nor illness followed the ejection.

4. Carriers—Ejection of Passenger—Unsuitable Place—Measure of Damages.—In such a case, where no time is lost and no additional expense incurred and there has been no personal injury or illness, the measure of damages is a sum reasonably sufficient to compensate plaintiff for the inconvenience and personal discomfort which she suffered as the direct and proximate result of her ejection at an unsuitable place.

JOHN E. KANE and E. T. BULLOCK for appellant.

SEAY & VIA for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, Libbie Dill, brought this action against the Illinois Central Railroad Company and Mobile & Ohio Railroad Company to recover damages for wrongful ejection as a passenger. The trial before a jury resulted in a directed verdict for the Illinois Central Railroad Company and a judgment against the Mobile & Ohio Railroad Company for $750.00. The Mobile & Ohio Railroad Company appeals.

The facts are as follows: On August 6th, 1914, plaintiff, Libbie Dill, and her mother-in-law, Maggie Dill, purchased from the Illinois Central Railroad Company, at Paducah, two tickets entitling them to transportation over its line from Paducah to St. Louis, Missouri. Late in the evening they boarded an Illinois Central train, which carried them to Cairo, Illinois, where, in order for them to reach their destination, it was necessary to leave the train on which they were passengers and take another Illinois Central train leaving there at about 2:30 on the morning of August 7th. At Cairo the passenger station is called the "Union

Station" and is maintained and used by the Illinois Central Railroad Company, Mobile & Ohio Railroad Company and other roads. Both the Illinois Central and Mobile & Ohio had early morning trains passing through Cairo and leaving from the Union Station for St. Louis. When on time, the Illinois Central train arrived and departed before the Mobile & Ohio train. On the morning of August 7th, however, the Illinois Central train was late, and the Mobile & Ohio train arrived and departed from the Union Station before the arrival of the Illinois Central train. After waiting in the union station for some time, Libbie Dill and her mother-in-law saw a train arrive. They claim that they then presented their tickets to the ticket agent, who assured them that it was their train. They further claim that they exhibited their tickets to a colored porter and to the conductor of the Mobile & Ohio train, who directed them to take passage on that train. After the train started from the union station the conductor examined plaintiff's ticket and informed her that she was on the wrong train and would have to get off. The train was stopped at a point beyond Cairo Junction. The conductor took hold of plaintiff's arm and assisted her down the car steps without putting a step on the ground for her to place her foot on. Plaintiff and her mother-in-law say that the place where they were put off was eight or ten city blocks from the "tower" and was at a dark and unfrequented spot.

After being put off, they walked up to the "tower" and remained there for perhaps a half-hour, when they were put on the Illinois Central train for St. Louis by the person in charge of the "tower." They reached St. Louis about six o'clock the next morning. They further say that they objected very strenuously to being put off and pleaded with the conductor not to put them off. They also claim that they offered to pay the conductor their fare to take them to another station.

For the Mobile & Ohio Railroad Company, the ticket agents at Cairo say that plaintiff and her mother-in-law did not exhibit to them their tickets and were not told by them to get on the Mobile & Ohio train. The conductor and flagman and also several station porters were introduced, and they say that they did not examine and inspect the tickets, or direct plaintiff and her mother-in-law to get on the train. It is further shown by the

conductor and flagman of the Mobile & Ohio train, by one of the road's local attorneys who happened to be on the train, and by the yard clerk, train dispatcher and signal man at Cairo Junction that the train in question stopped right opposite the "tower," and plaintiff and her mother-in-law got off the train fifty or sixty feet south of the board-walk leading from the railroad into the "tower." It was further shown that the conductor saw the yard clerk and informed him of the fact that he had two ladies who had gotten on his train by mistake and asked him to flag the Illinois Central train and to put them on that train. The yard clerk was at the end of the board-walk nearest the railroad track with a light, and he says that after the train left, plaintiff and her mother-in-law came to him and went into the "tower," where they occupied two chairs until the arrival, about thirty-six minutes later, of the Illinois Central train, which they boarded. There was also evidence to the effect that the Mobile & Ohio train stopped at the place where it is usual for that road to discharge and take on passengers, and that this place was well lighted by lights from the "tower" and from the railroad and that the walkways were in good condition.

Plaintiff predicates her right to recover on the claim that the agents and servants of the Mobile & Ohio Railroad Company inspected her ticket and directed her to board the train on which she took passage; that thereafter that company, with gross negligence, carried her to an uninhabited, dangerous and desolate place, where there was no shelter, and there ejected her and compelled her to walk and carry her baggage over a rough, dangerous and uninhabited way to a place where she could secure shelter. This question was submitted to the jury with directions to find for plaintiff, if they so believed, such an amount in damages as would fairly compensate her for any mental pain and anguish which they might believe from the evidence that she suffered as the direct and proximate cause of her ejection. On the other hand, the jury were told that if they believed from the evidence that the defendant ejected plaintiff from the train at a suitable place for passengers to alight, they should find for the defendant. By another instruction, the jury were told that if they believed from the evidence that when the employes of defendant stop-

ped the train and informed plaintiff that she would be required to get off, plaintiff offered to pay said employes to transport her to a passenger station on defendant's road before requiring her to leave said train, and said employes refused to accept said transportation charges and required her to leave the train at a place on its line remote from a passenger station, then the law was for the plaintiff and the jury should so find.

It seems to us that in a case like this, where two roads jointly maintain a union station and run into and out of that station, and a party holding a ticket over one of the roads, by misdirection of their joint employes or the employes of the wrong train, takes passage on the wrong train, the true rule is that she is not a trespasser in the sense that she may be joined at any time or place, but is entitled to ride on the wrong train to the reasonably safe and convenient point from which she can reach a train on the proper road. Here both roads ran to Cairo Junction, and that was the proper place for plaintiff to be put off in order that she might continue her passage on the Illinois Central road over which she had a ticket. If, therefore, the Mobile & Ohio train stopped opposite the "tower," plaintiff and her mother-in-law had but a short distance to walk in order to reach the "tower," where ample accommodation for her comfort was provided, and her ejection at that point was proper. Plaintiff's whole case, therefore, rests on the proposition that she was carried eight or ten squares past the "tower" to a place that was not reasonably safe and convenient of access to the "tower." If that be true, the question is, what is the proper measure of damages? The evidence clearly shows that she was not subject to any additional expense or delay, but rode on the ticket which she had purchased and took the same train over the Illinois Central road that she would have taken had it not been for the alleged misdirection. While the place where, according to her evidence, she was compelled to alight was some distance from the "tower" and at an unfrequented spot, the evidence fails to show that this place was dangerous in the sense that she suffered any personal injury or illness as the result of her ejection at that place. She complains in her evidence of the inconvenience and discomfort attending her return to the "tower" and of the

fact that she was frightened. Not having received any personal injury or suffered any illness of any kind as the result of her ejection, we conclude that she was not entitled to recover for mere fright, and that the trial court erroneously authorized a finding for mental suffering. In a case like this, where no time was lost and no additional expense was incurred, and no personal injury or illness is shown, the damages should be confined to such a sum as will fairly compensate plaintiff for the inconvenience and discomfort which she suffered as the direct and proximate result of her ejection at an unsuitable place. Louisville & Northern Railway & Lighting Company v. Comley, 169 Ky. 11, 183 S. W. 207.

With respect to the instruction authorizing a recovery if plaintiff, on being told to leave the train, offered to pay her fare to the next passenger station, it is sufficient to say that no such ground of recovery was relied on in the petition and it was, therefore, error to submit this phase of the case to the jury.

Judgment reversed and cause remanded for a new trial consistent with this opinion.